UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

SYED IBRAHIM HUSSAIN,

          Defendant.
_____/

CASE NO. 14-20568

HON. VICTORIA A. ROBERTS

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its undersigned counsel, files this sentencing memorandum. The defendant threatened to rape and kill a young woman who refused his romantic advances. When these threats failed, the defendant formed a plan to kidnap and sexually assault her. The defendant took steps to accomplish his plan, including tracking the woman's movements by affixing a GPS tracker to her car, purchasing handcuffs and leg irons, and arming himself with a shotgun, taser and bullet proof vest. At the same time, the defendant was searching for, and downloading, videos and images of child pornography over the internet. These are serious and dangerous crimes that deserve a significant sentence. But a significant sentence is even more appropriate in this case because

the defendant has consistently minimized his conduct, placed blame for his crimes elsewhere, and failed to fully accept responsibility for his actions.

## BACKGROUND

In 2012, the defendant began communicating over the internet with a young woman, VICTIM 1, who he met on Facebook. Shortly after the defendant began communicating with VICTIM 1, he demanded that she marry him but she refused. In late December, 2012, the defendant responded by sending VICTIM 1 numerous messages in which the defendant threatened to rape, kill, burn, strangle and kidnap her. A complete list of these messages is contained in the Presentence Report, *see* PSR at ¶ 25, but the following are a representative example:

- 12/16/12 text message from HUSSAIN to VICTIM 1: "Lord cool my anger lest i strangle her within the next 15 hours...she is Urs to punish not mine. Oh Allah cool my anger for only strangling her, slapping her, killing her enter my mind. Ameen."

- 12/16/12 text message from HUSSAIN to VICTIM 1: "if I ever do strangle u, rape u. kill u, slap u, burn u, for all u've done that would still not be 1% of what Allah has planned for u…."

- 12/19/12 text message from HUSSAIN to VICTIM 1: "Why u not answering now? U want me to come thete [sic] kidap im [sic] a bag and rape u here or what?"

After making these threats, the defendant told VICTIM 1 to "do whats [sic] right and marry me." *Id.* The defendant warned VICTIM 1 that if "I hear from

anyone other than u, such as your family or police, then it is officially all out war." *Id.* Following these threats, VICTIM 1 cut off contact with the defendant.

Over the next several months, the defendant formed a plan to kidnap and sexually assault VICTIM 1. On April 24, 2013, the defendant attempted to enter Canada, but was refused entry because Canadian authorities discovered evidence of his kidnaping plan on his phone and in his vehicle. PSR at ¶ 14-17. The defendant was returned to the United States where law enforcement officers conducted an investigation of the defendant's activities and discovered evidence that he had taken substantial steps toward completing his plan to kidnap and assault VICTIM 1. This evidence included the following:

- The defendant hired a private detective to obtain information about VICTIM 1, her car, and family. PSR at ¶ 14.

- The defendant purchased GPS tracking devices over the internet, which he affixed to VICTIM 1's car. The defendant used his phone to track VICTIM 1's movements. On April 24, 2013, FBI agents found a GPS tracking device purchased by the defendant affixed to VICTIM 1's car. PSR at ¶ 23.

- Although the defendant had his own vehicle, he rented a separate car which he used when installing the GPS trackers and which he intended to use to carry out the kidnapping. When law enforcement searched the rental car (which was located at the defendant's residence), it was found to contain a Mossberg 12 gauge shotgun, handcuffs and duct tape. PSR at ¶ 19.

- Law enforcement officers searched the defendant's residence (an extended stay hotel room) and found body armor, leg irons, a taser, a GPS tracker, a receipt for the purchase of the shotgun found in the rental car, ammunition, and a laptop computer. Several unopened

3

boxes addressed to the defendant were in the hotel office. These boxes contained additional GPS tracking devices, handcuffs and leg irons. PSR at ¶ 18.

When the defendant was stopped at the border he was in possession of a Palm Personal Digital Assistant, which he used to record a "to-do" list for carrying out the kidnapping. Among the entries in the digital assistant were the following:

| Date | Entry |
|---|---|
| 3/31/13 | Find legit reasons / alibis to gps |
| 4/14/13 | Buy cuffs |
| 4/14/13 | Change gps |
| 4/15/13 | Dye hair/beard |
| 4/16/13 | charge stungun |
| 4/16/13 | Buy shotgun & ammo |
| 4/16/13 | Plant gps@2:10am |
| 4/16/13 | Buy gps |
| 4/18/13 | Activate gps |
| 4/18/13 | Buy rope chain |
| 4/19/13 | Remove/place gps@2:55am |
| 4/19/13 | Confirm cars |
| 4/19/13 | Identify drivers |
| 4/19/13 | Activate trak |
| 4/19/13 | Dye beard |
| 4/20/13 | Who's driving cars |
| 4/20/13 | Buy shotgun, ammo, tattoo |
| 4/20/13 | Buy hard liquor |
| 4/21/13 | Prep livonia room |
| 4/22/13 | Fake tattoo |
| 4/22/13 | Buy panties |
| 4/22/13 | Buy shotgun, ammo, ambien, mich id |
| 4/22/13 | Buy duct, hc's |
| 4/24/13 | Buy anti-gps |
| 4/24/13 | Buy scope |
| 4/24/13 | Buy tattoo |
| 4/24/13 | Prep clip |
| 4/24/13 | Get an iraq job |
| 4/24/13 | Get visa to iraq |
| 4/24/13 | Monitor egress to oakland |

    4/24/13   Prep car.s for abd [sic]
    4/25/13   Monitor oakland
    4/25/13   Print abuse papers
    4/25/13   Prep taylor room
    4/25/13   Setup enticing tweet

PSR at ¶ 17.

  In addition, a forensic examination of the defendant's laptop computer showed that from the time the defendant communicated with VICTIM 1 up to the time of his arrest, the defendant conducted internet searches using the following terms (often repeating the same search on several occasions over time):

  "how to rape"
  "how to rape effectively"
  "kidnap"
  "is it a crime to kidnap an adult"
  "how to report a kidnapped adult"
  "the most powerful stalking tools"
  "stalking Oakland sister Dearborn"
  "stalking Iraqi Dearborn"
  "stalking legal protection"
  "stalking defense attorney Michigan"
  "Michigan stalking laws"
  "how to stalk someone by car"
  "how to stalk someone and not get caught"
  "[Victim 1's name] Dearborn stalking"
  "does gps tracking count as stalking"
  "best online stalking tools"
  "good cars for stalking"
  "how to stalk a girl"
  "what are the stalkers rights"
  "convicted stalkers must wear tethers"
  "why is stalking illegal"
  "why is stalking against the law"
  "why is stalking a crime"
  "what if she 'changes her mind' stalking"

PSR at ¶ 30.

In addition, the defendant was searching for and downloading videos and images of child pornography onto his laptop computer. The forensic examination of the defendant's laptop computer revealed numerous internet searches using words and terms associated with child pornography. PSR at ¶ 30. A total of 15 videos and 32 images of child pornography were found on the defendant's laptop, including "a video file which showed an approximately 10 year old girl performing oral sex on an adult male." *Id.*

## ARGUMENT

Under 18 U.S.C. § 3553(a)(2), a court must impose a sentence "sufficient, but not greater than necessary, to comply" with the following purposes: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In fashioning such a sentence, a court shall consider, among the other factors set forth in Section 3553(a), "the nature and circumstances of the offense," "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), the need for

adequate deterrence, and the applicable guidelines set forth by the Sentencing Commission. 18 U.S.C. § 3553(a)(4).

I.     The Defendant Engaged In Dangerous Conduct

The defendant's conduct in this case was extremely serious. Not only did the defendant repeatedly threaten to kill and harm VICTIM 1, he formed a plan to kidnap and sexually assault her as well. The evidence indicates that the defendant was on the eve of conducting the kidnapping when he was caught at the US-Canadian border on April 24, 2013. This is evident from the entry in his digital assistant from that same day: "Prep car.s for abd." The defendant later admitted that "abd" stood for "abduction." In addition, the defendant had fully amassed all of the instruments he needed to carry out the kidnapping (the rental car, hand cuffs, leg irons, duct tape, shotgun, ammunition, taser, and body armor). The fact that the shotgun, hand cuffs and duct tape were found together in the rental car further demonstrates the defendant's readiness.

Moreover, there is absolutely nothing in the defendant's background that justifies this type of conduct. The defendant is an only child who graduated from college and was attending medical school at the time of this offense. PSR at ¶ 89. His father is a physician who paid the defendant $45,000 to $100,000 per year to work for him prior to the defendant entering medical school. PSR at ¶ 95. And the challenges the defendant has faced in his life (divorce, minor medical issues,

anxiety, depression, insomnia) are no more difficult than many other, law abiding people face in their lives. The defendant was essentially living a fairly privileged life, yet he decided to spend his time threatening, harassing, and planning to harm a woman who would not agree to marry him. Such conduct deserves a lengthy sentence.

II. <u>The Defendant's Failure to Accept Responsibility Means That His Sentencing Guidelines Should Be Higher Than Contained in the Rule 11 Plea Agreement</u>

The Presentence Report and the Rule 11 plea agreement provided the defendant with a three level reduction to his base offense level based on his acceptance of responsibility, pursuant to Guideline §3E1.1. However, it is ultimately the defendant who, at the time of sentencing, bears "the burden of proving his acceptance of responsibility by a preponderance of the evidence." *United States v. Bacon*, 617 F.3d 452, 458 (6th Cir. 2010) (affirming district court's denial of acceptance of responsibility for a defendant who, after pleading guilty, submitted a "disingenuous" letter to Probation Office "that portrayed himself as a victim, not as a person who recognized that he had committed a criminal act."). For the reasons stated below, the government does not believe that the defendant has met this burden.

There are various factors a Court may examine to determine whether a defendant qualifies for an acceptance of responsibility reduction, but chief among

8

them is that the defendant "truthfully admit[] the conduct comprising the offense(s) of conviction, and truthfully admit[] or not falsely deny[] any additional relevant conduct for which the defendant is accountable . . . ." U.S.S.C.G. §3E1.1, Application Note 1(A). A defendant "who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility. *Id.*

The act of pleading guilty does not automatically qualify a defendant for a reduction due to acceptance of responsibility. "A defendant who enters a guilty plea is not entitled to an adjustment under this section [§3E1.1] as a matter of right." *Id.*, Application Note 3. This is because a defendant who pleads guilty can nevertheless engage in conduct "that is inconsistent with such acceptance of responsibility." *Id.*

The Rule 11 plea agreement entered into by the parties specifically addresses this situation. The Rule 11 plea agreement states that "[i]f the Court finds . . . that the offense level should be higher because, after pleading guilty, Defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offenses; or obstructed justice or committed any crime . . . and if any such finding results in a guideline range higher than 63 to 78 months, the higher guideline range becomes the agree range." *See* Rule 11 Plea Agreement, Docket No. 32, PgID 74-75.

Moreover, the parties are permitted to take a position with respect to the guidelines that is different than contained in the Rule 11 plea agreement when it is "necessary to the Court's determination" of whether acceptance of responsibility should apply. *Id.* at PgID 75. In short, the plea agreement protects against a defendant pleading guilty in order to obtain the benefit of plea agreement, but subsequently engaging in conduct that is inconsistent with his previously expressed acceptance of responsibility – which is precisely the situation the Court faces in this case.

Since pleading guilty, the defendant has made false statements to his Probation Officer and has made false statements in his sentencing memorandum – all of which are designed to minimize his conduct or his responsibility for his crimes. False statements by the defendant directly, or through his attorney in a sentencing memorandum, can be a basis upon which to deny acceptance of responsibility. *United States v. Edwards*, -- F. App'x --, 2015 WL 3973388, *6 (6th Cir. 2015) ("a defendant who frivolously contests relevant facts can be denied credit for acceptance of responsibility, even if the arguments are made by the defendant's lawyer rather than the defendant himself.").

  A. *The Defendant Makes False Statements About the Victim*

The defendant states in his sentencing memorandum that it was VICTIM 1 who "proposed an intimate relationship" with the defendant. Def. Sent. Memo. at 22. The defendant says that VICTIM 1 proposed "to have Mr. Hussain's child,"

and that VICTIM 1 "expressed her interest in sado-masochism" to the defendant. *Id.* The defendant and VICTIM 1 were not engaged in a traditional dating relationship. In fact, they only met in person on a few occasions, and always in a public place (a public library and Islamic Center). The vast majority of their communication took place over text messages and social media. During the course of its investigation, the government obtained the content of these communications and none of them contain the types of statements the defendant describes in his sentencing memorandum. This leads the government to believe that the defendant's assertions are untrue and are designed to make the defendant's conduct seem less menacing and explain away the multiple pairs of handcuffs, leg irons, and duct tape that the defendant possessed for use in his kidnapping plan.

> B.  *The Defendant Falsely Claims That He Was Abusing Alcohol, Which "Clouded" His Judgment and "Contributed" to His Offenses*

According to the Presentence Report, the defendant told his Probation Officer that he was "abusing alcohol, which he consumed three to four times per week in the months surrounding the offense." PSR at ¶ 85. In his sentencing memorandum, the defendant claims that his use of prescription drugs "along with the consumption of alcohol clouded his thought process, affected his behavior, and contributed to him becoming involved in these offenses." Def. Sent. Memo. at 21. The defendant would have this Court believe that alcohol is to blame for his conduct, not the defendant himself.

There is no evidence to support this claim. In fact, the evidence collected regarding the defendant's daily activities – which was fairly extensive in this case – shows no sign that the defendant was using any alcohol, let alone abusing it frequently or in large quantities. For example:

- The defendant was living in an extended stay hotel room at the time of the offenses. That room was searched and photographed by law enforcement. Some food items were found (such as peanut butter, cereal, milk and diet Coke), but no alcohol or alcoholic containers were located. No receipts for the purchase of alcohol were located in the hotel room either.

- A search of the defendant's car and the rental car he was using also yielded no alcohol or alcoholic containers. Receipts recovered from the rental car showed that the defendant made purchases at a restaurant, a Meijer's, and a gas station, but none of the items he purchased were alcohol.

- During the defendant's two proffer sessions with the government, he admitted to using testosterone and prescription sleeping pills, but made no mention of alcohol use.

- During the course of this case, the defendant retained a psychologist who conducted an interview and examination of the defendant. According to the psychologist's report, which is dated August 22, 2013, "[t]he patient smokes electronic cigarettes. He is a rare alcohol drinker. He will occasionally have a drink with his mother on a 'special occasion.'"

- The defendant retained a second psychologist who examined him primarily on the topic of whether the defendant presented a risk of sexual abuse of children. During this examination, the defendant "denied any history of abusing alcohol . . . ." In addition, the psychologist administered the defendant the Michigan Alcohol Screening Test (MAST), which is a "widely used measure for assessing alcohol abuse." According to the psychologist, "[a] score of

> two or less on the MAST suggests no apparent problem with alcohol . . . Hussain scored zero (0) on this test, suggesting no apparent problem with alcohol."

Perhaps the best evidence that the defendant's alleged "clouded" judgment due to alcohol abuse is untrue comes from the nature of the defendant's conduct. The defendant engaged in a highly premeditated plan to kidnap VICTIM 1. The defendant hired a private detective, placed GPS trackers on the defendant's car, rented a car, and purchased various implements (handcuffs, leg irons, duct tape, shotgun, taser, etc.) he needed to carry out the kidnapping. The defendant meticulously recorded in his digital day planner a "to do" list of tasks that he needed to perform in order to carry out his plan. Moreover, the defendant's Google searches show that he was carefully planning the kidnapping, was aware that his conduct was illegal, and was taking steps to avoid getting caught. These are not the actions of a person who is so drunk or high on prescription drugs that he has a "clouded thought process."

    C.    *The Defendant Falsely Claims that He Possessed the Body Armor and Taser Because He Was Threatened by an Unidentified Individual*

The defendant claims in his sentencing memorandum that he possessed body armor and a taser because an unidentified individual made "detailed and specific threats to kill Mr. Hussain, on Facebook." Def. Sent. Memo. at 23.The defendant also claims that he reported these threats (to whom he does not say) and that the

unidentified person spent a month in jail. The defendant had previously told this same story to the government, but despite examining the defendant's Facebook account and various electronic devices, the government was unable to corroborate any of it. The government believes this is just another false statement made by the defendant in an attempt to downplay the seriousness of his own conduct.

> D.   *The Defendant Falsely Claims That Child Pornography Was Placed on His Computer by a Computer Program*

The defendant states in his sentencing memorandum that he takes "full responsibility for the use of the Frostwire program, which allowed CP [child pornography] to be saved onto his computer." Def. Sent. Memo. at 21. This makes it seem as if the defendant had no affirmative role in the possession of child pornography and that it simply appeared on his computer. However, the forensic examination of the defendant's laptop computer shows that he actively sought child pornography by conducting searches on the internet for this type of material. This is not a situation where a computer program is to blame for the defendant's crimes.

> E.   *The Defendant Has Been Reluctant to Accept Responsibility on Prior Occasions During This Case*

The defendant's statements to the Probation Officer and his statements in his sentencing memorandum are not the first time that he has sought to minimize his conduct. For example, in December, 2013, the defendant sent a *pro se* letter to the

government in which he falsely stated: "I didn't physically harm anyone, nor was in the process of doing so . . . ." The defendant also falsely claimed "that my searches, purchases, and items have been exaggerated to a seriousness they didn't have or that were short-lived and didn't last." *See* Government's Supplemental Response to Court Order Regarding Time Line of Plea Bargaining Process, Docket No. 57, Exhibit A.

Similarly, when the defendant pleaded guilty on October 16, 2014, the defendant had the following exchange with the Court:

> THE COURT: I want to go back to the Extortion charge for a moment. I'm looking at the worksheet. I know that you said earlier, Mr. Hussain, that you demanded marriage and you threatened kidnapping and assault. Did you ever do anything to -- that would indicate that you would be able to carry out kidnapping or assault against this woman?
>
> MR. HUSSAIN: Yes. It became apparent to me after my arrest that there were such actions in the furtherance of that.
>
> THE COURT: What did you do?
>
> MR. HUSSAIN: Apparently it involved handcuffs and things of that nature, GPS tracking devices and some of these other items which are mentioned in Appendix B.
>
> THE COURT: Such as what?
>
> MR. HUSSAIN: These leg irons, a flashlight, a shotgun, a six-page note, the boxes containing GPS units, tracking devices.
>
> THE COURT: And you were in possession of these things because you had a thought that you might carry out the threat of assault or kidnapping?

>MR. HUSSAIN: That's not the reason that I understand to be in possession of these things, but it could be that -- that -- because I wasn't always with it at the time, so it may have been that during those times these things were very well in the furtherance of such a -- of the kidnapping, of an intent to kidnap.
>
>THE COURT: Well, I don't quite understand what you're saying. Why did you have all of these things with you?
>
>MR. HUSSAIN: (No Response)
>
>MR. SCHULMAN: Your Honor, can I have a minute with him?
>
>THE COURT: Sure.
>
>MR. HUSSAIN: Yes, Your Honor. These items I had purchased with thoughts of kidnapping the victim, and of course there were other factors going on at the time as well which were certain psychiatric and psychological factors, but these still were purchased for that purpose and I possessed them for that purpose.

In summary, the defendant is presenting these false narratives to minimize his responsibility for his crimes. *United States v. Hill*, -- F. App'x -- , 2015 WL 3953780, *2 (6th Cir. 2015) (affirming district court's decision not to award acceptance of responsibility to defendant who "consistently misrepresented and underplayed his involvement in the criminal activity"). He therefore does not qualify for acceptance of responsibility under §3E1.1, which means that his base offense level should be 29, his Criminal History should be Category I, and his guideline range should be 87 to 108 months' imprisonment.

CONCLUSION

For the foregoing reasons, the government requests that the Court impose a sentence of 87 to 108 months' imprisonment.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney


/s Michael C. Martin
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
michael.c.martin@usdoj.gov

Date: November 9, 2015

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 9, 2015, I filed the foregoing document on the ECF system, which will send notice to: Martin J. Beres, 42211 Garfield Road, #146, Clinton Township, MI 48038.

                                    s/Michael C. Martin
                                    Assistant United States Attorney
                                    211 W. Fort Street, Suite 2001
                                    Detroit, MI  48226
                                    Phone:  (313) 226-9100
                                    E-Mail: Michael.C.Martin@usdoj.gov